**UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| MICHELLE ROMINE,<br>    Appellant, | DOCKET NUMBER<br>PH-0752-17-0373-X-1 |
| v. | |
| DEPARTMENT OF THE ARMY,<br>    Agency. | DATE: May 17, 2023 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Michelle Romine</u>, Vero Beach, Florida, pro se.

<u>Rayetta Waldo</u> and <u>Tonda J. Waugh</u>, Huntington, West Virginia, for the
    agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member[2]

---

[1] A nonprecedential order is one that the Board has determined does not add
significantly to the body of MSPB case law. Parties may cite nonprecedential orders,
but such orders have no precedential value; the Board and administrative judges are not
required to follow or distinguish them in any future decisions. In contrast, a
precedential decision issued as an Opinion and Order has been identified by the Board
as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

[2] Member Leavitt's name is included in decisions on which the three-member Board
completed the voting process prior to his March 1, 2023 departure.

**FINAL ORDER**

¶1    In a March 8, 2019 compliance initial decision, the administrative judge found the agency in noncompliance with a January 18, 2018 settlement agreement, which had been entered into the record for enforcement by the Board in the underlying appeal. *Romine v. Department of the Army*, MSPB Docket No. PH-0752-17-0373-C-1, Compliance File (CF), Tab 29, Compliance Initial Decision (CID); *Romine v. Department of the Army*, MSPB Docket No. PH-0752-17-0373-I-1, Initial Appeal File (IAF), Tab 21, Tab 23, Initial Decision (ID). Accordingly, the administrative judge granted the appellant's petition for enforcement and ordered the agency to comply with its obligations under the settlement agreement. CID at 13. For the reasons discussed below, we now find the agency in compliance and DISMISS the appellant's petition for enforcement.

**DISCUSSION OF ARGUMENTS AND EVIDENCE ON COMPLIANCE**

¶2    On June 30, 2017, the agency removed the appellant from her position as a Contract Specialist with the U.S. Army Corps of Engineers. IAF, Tab 6 at 13. The appellant appealed her removal to the Board. IAF, Tab 1. On October 5, 2017, the agency moved to dismiss the appeal as moot, asserting that it had rescinded the removal and was returning the appellant to duty. IAF, Tab 11. The administrative judge denied the motion, however, because the agency stated that it would not pay the appellant back pay and because the appellant had a claim of disability discrimination for which she could receive compensatory damages. IAF, Tab 12. On January 18, 2018, the parties filed a written settlement agreement in which they agreed that the appellant would withdraw her appeal and that the agency would provide her "back pay in accordance with the Back Pay Act" for the period from August 6 through September 30, 2017, and a lump sum payment in attorney fees. IAF, Tab 21 at 4. The settlement agreement specified that the agency would complete its part in processing the back pay payment within 30 days with the recognition that final processing and payment required

coordination with the regional civilian personnel processing office and the Defense Finance and Accounting Service (DFAS). *Id.* The parties filed a supplement to the agreement stating that they wished to have the agreement entered into the record for enforcement purposes. IAF, Tab 22. On January 19, 2018, the administrative judge issued an initial decision dismissing the appeal as settled and entering the settlement agreement into the record for enforcement by the Board. ID at 1-2. The initial decision became the final decision of the Board after neither party filed an administrative petition for review. ID at 3; *see* 5 C.F.R. § 1201.113.

¶3        On May 21, 2018, the appellant filed a petition for enforcement alleging that the agency had not paid her back pay pursuant to the settlement agreement. CF, Tab 1 at 3. Thereafter, the agency submitted evidence showing that it had issued the following two checks to her: (1) a June 7, 2018 check in the net amount of $2,805.62, which represented $7,068.80 in total wages for the four pay periods, plus a $628.88 lump sum payment for 28 hours of annual leave, minus the appellant's unpaid advance sick leave balance of $3,181.21 and deductions totaling $1,710.85 for mandatory employee retirement contributions ($56.55), Social Security ($280.02) and Medicare ($65.49) taxes, life insurance premiums ($29.40), Federal ($522.27) and state ($333.00) income tax, and a thrift savings plan contribution ($424.12); and (2) a June 21, 2018 check in the amount of $3,668.61, which included $201.92 in interest on the back pay wages of $7,068.80, calculated from the date she would have received the pay through May 22, 2018, and $3,466.69 in "erroneously refunded" Federal Employee Health Benefit (FEHB) premiums minus tax withholdings.[3] CF, Tab 5 at 6-9, 15-16.

---

[3] In a sworn declaration, a supervisor for the Settlement/Theater Support Team within Civilian Pay Operations at DFAS explained that, due to several errors by the agency and DFAS, the appellant received an "erroneous refund" of FEHB premiums for 15 pay periods in the amount of $3,739.50. CF, Tab 5 at 8, 10-11. She stated that the payment of $3,466.69 comprised the "erroneous refund" of $3,739.50 minus Social Security

¶4    In the March 8, 2019 compliance initial decision, the administrative judge found that the agency was not in compliance with the settlement agreement.  CID.  Specifically, he found that, although the agency eventually sent checks to the appellant in June 2018, she had not received or negotiated those checks.  CID at 8.  In addition, he found that the agency improperly offset the advance sick leave debt from the back pay award.  CID at 9-12.  Accordingly, the administrative judge ordered the agency to take the following actions:  (1) recalculate the back pay owed to the appellant under the terms of the settlement agreement; (2) solicit the appellant's cooperation in canceling the prior checks that were issued to her but not received or negotiated by her; and, (3) issue payment to the appellant of the correct amount of back pay due within a reasonable period of time.  CID at 13.  The administrative judge further instructed the agency to recalculate the interest owed on the recalculated and reissued back pay award pursuant to 5 C.F.R. § 550.806(a)(2), which provides that "[i]nterest accrual ends at a time selected by the agency that is no more than 30 days before the payment of the back pay interest payment."  CID at 9.  Neither party petitioned for review of the compliance initial decision by April 12, 2019, and it therefore became the final decision of the Board.  CID at 15; *see* 5 C.F.R. § 1201.113.

¶5    On April 12, 2019, the agency informed the Board that it had recalculated the appellant's back pay award consistent with the compliance initial decision but that DFAS had been unable to issue the checks to the appellant because she had not completed the paperwork required to cancel the prior checks and reissue payment.  *Romine v. Department of the Army*, MSPB Docket No. PH-0752-17-

taxes ($92.74), Medicare taxes ($21.69), Federal income tax ($92.38), and state income tax ($66.00).  *Id.* at 9-12.  The DFAS supervisor also stated that the erroneously refunded FEHB premiums, together with the uncollected Social Security and Medicare taxes, would be established as a debt that the appellant would be required to repay.  *Id.* at 9-10.

0373-X-1, Compliance Referral File (CRF), Tab 1. In a June 12, 2020 order, the Board directed the agency to provide an update on the status of the back pay payment. CRF, Tab 3 at 1-2. In responses dated July 6 and 10, 2020, the agency stated that it had received the requisite forms from the appellant, that it had forwarded them to DFAS in February 2020, and that DFAS issued a "replacement check" to the appellant on July 10, 2020, in the amount of $6,474.23, i.e., the total amount of the two prior checks ($2,805.62 and $3,668.61). CRF, Tabs 4-5. The agency did not address its compliance with the administrative judge's order to pay the appellant the advance sick leave debt it previously offset from the back pay award or to recalculate the interest. The appellant responded that she had received the check but that the back pay amount was incorrect because the agency had again improperly offset the advance sick leave debt from the back pay award. CRF, Tab 6 at 3.

¶6        In a September 24, 2020 order, the Board directed the agency to provide additional information regarding its compliance with its obligations to: (1) to pay the appellant the amount it previously offset from the back pay award; and (2) recalculate and pay the interest owed to the appellant pursuant to 5 C.F.R. § 550.806(a)(2). CRF, Tab 8. The order advised the appellant that she could reply to the agency's submission within 21 calendar days of service and that, if she did not respond, the Board might assume that she was satisfied and dismiss her petition for enforcement. *Id*. at 3-4.

¶7        On October 15, 2020, the agency responded to the Board's order, asserting that it had taken the required actions and was in compliance with the settlement agreement. CRF, Tab 9. As evidence, the agency provided a sworn affidavit from a DFAS analyst stating that a check was being processed and should be received by the appellant on or before October 22, 2020, in the amount of $3,569.60, which consisted of previously withheld amount of $3,181.21 plus $388.39 in interest. *Id.* The agency submitted a back pay computation summary report reflecting that it calculated the additional interest on the $3,181.21 from

May 13, 2018, through September 22, 2020, which resulted in the total interest payment of $388.39. *Id.* at 9-10. The appellant did not respond to the agency's October 15, 2020 submission.

¶8    A settlement agreement is a contract and, as such, will be enforced in accordance with contract law. *Burke v. Department of Veterans Affairs*, 121 M.S.P.R. 299, ¶ 8 (2014). The Board will enforce a settlement agreement that has been entered into the record in the same manner as a final Board decision or order. *Id.* When the appellant alleges noncompliance with a settlement agreement, the agency must produce relevant material evidence of its compliance with the agreement or show that there was good cause for noncompliance. *Id.* The ultimate burden, however, remains with the appellant to prove breach by a preponderance of the evidence. *Id.*

¶9    As described above, in the compliance initial decision, the administrative judge found that the agency failed to establish that it had complied with its obligation to pay the appellant the appropriate amount of back pay for the four pay periods, from August 6 through September 30, 2017, pursuant to the settlement agreement. CID at 1-13. The agency has now submitted evidence showing that it sent the appellant a "replacement check" on July 10, 2020, for $6,474.23, the total amount of the two June 2018 checks ($2,805.62 and $3,668.61). CRF, Tabs 4-5. As the July 10, 2020 check replaced the two June 2018 checks, we find that this payment, like the June 2018 checks, includes, before appropriate deductions, the following: $3,887.59 in back pay wages (i.e., total back pay wages of $7,068.80 minus $3,181.21 as payment for the appellant's advance sick leave debt), $201.92 in interest on the back pay wages, a $628.88 lump sum payment for annual leave, and an "erroneous refund" for FEHB premiums in the amount of $3,466.69.[4] CF, Tab 5; CRF, Tabs 4-5, 9. The agency

---

[4] It is unclear why the agency reissued to the appellant in October 2020 the $3,466.69 refund for FEHB premiums (less tax withholdings) given that, according to the agency's

has also submitted a sworn declaration attesting that DFAS was processing a check that the appellant would receive no later than October 22, 2020, for the outstanding back pay wages in the amount of $3,181.21, plus $388.39 in interest. CRF, Tab 9 at 9-10. In light of this evidence and the fact that the appellant has not challenged these calculations or payments, we find the agency in compliance with its obligation under the settlement agreement to pay the appellant back pay for the four pay periods. *See Baumgartner v. Department of Housing and Urban Development*, 111 M.S.P.R. 86, ¶ 9 (2009) (assuming that an appellant who did not respond to the agency's evidence of compliance was satisfied with the agency's compliance).

¶10    Regarding interest, the Back Pay Act provides that interest on back pay begins to accrue on the date or dates the employee would have received the pay and stops accruing on a date that is no more than 30 days before the back pay interest payment will be made.[5]    5 U.S.C. § 5596(b)(2)(B)(i); 5 C.F.R. § 550.806(a)(2). As described above, the agency's evidence reflects that: (1) on June 21, 2018, it paid the appellant $201.92 in interest on her total back pay wages of $7,068,80, which accrued from August 6 through May 22, 2018, CF, Tab 5 at 9, 18-19; and (2) on October 22, 2020, it paid the appellant $388.39 in interest on the $3,181.21 of previously withheld back pay wages, which accrued from May 13, 2018 through September 22, 2020, CRF, Tab 9 at 4, 9-10.

¶11    First, we find that the agency properly calculated back pay interest on the $3,181.21 portion of the back pay wages that it initially withheld from the appellant's back pay award as payment for her advance sick leave debt. The

---

prior submissions, the refund was erroneously paid in June 2018 due to compounded errors by the agency and DFAS. CF, Tab 5 at 8, 10-11. Nonetheless, the agency's apparent overpayment to the appellant does not preclude us from finding the agency in compliance with its obligations under the settlement agreement.

[5] As noted above, the settlement agreement provided that the agency would provide the appellant back pay in accordance with the Back Pay Act. IAF, Tab 21 at 4.

evidence reflects that the agency paid the appellant interest on this amount as part of its June 21, 2018 interest payment, which included interest on the full amount of back pay wages for the period from the date the appellant would have earned the pay through May 22, 2018. CF, Tab 5 at 6-9, 18-19. Although the agency did not pay the appellant this portion of her back pay wages within 30 days of May 22, 2018, the agency's evidence reflects that the appellant received a check for $3,181.21 no later than October 22, 2020, along with an additional $388.39 in interest, covering the period from May 13, 2018, through September 22, 2020. CRF, Tab 9 at 7-10. Accordingly, consistent with the Back Pay Act, the agency paid the appellant interest on the $3,181.21 portion of her back pay award from the date she would have earned it through within 30 days of payment.

¶12     Second, although the agency attempted, in June 2018, to pay the appellant the $3,887.59 portion of back pay wages and $201.92 in interest calculated through May 22, 2018, the appellant did not receive it until after the agency reissued payment on July 10, 2020. Thus, under the Back Pay Act, the appellant is entitled to additional interest on this portion of her back pay award through a date no more than 30 days from July 10, 2020. However, the agency sent the June 7 and 21, 2018 checks to the appellant's address of record, and the appellant did not provide the paperwork required to cancel the prior checks and reissue payment until early 2020, despite repeated efforts by the agency to obtain the forms beginning in October 2018. CF, Tab 25; CRF, Tabs 1, 4-5, 9. Accordingly, we find that the appellant is, in part, responsible for the agency's delay in reissuing her back pay payment. *See Coe v. U.S. Postal Service*, 101 M.S.P.R. 575, ¶¶ 13-14 (2006) (holding that, when an appellant does not cooperate with the agency's efforts to achieve compliance, the Board may deny the petition for enforcement). Moreover, the appellant has not challenged the agency's interest calculations, despite being notified of her opportunity to respond to the agency's evidence of compliance and that the Board might construe her decision not to respond as evidence that she was satisfied with the

agency's compliance.  CRF, Tabs 3, 7-8.  Given the appellant's failures to maintain a current address with the agency and timely return the paperwork required to reissue the June 7, 2018 payment, as well as her decision not to respond to the agency's evidence regarding its interest payments, we find the agency is compliance with its obligation to pay interest on the back pay award. *See Baumgartner*, 111 M.S.P.R. 86, ¶ 9.

¶13    In light of the foregoing, we find that the agency is now in compliance and dismiss the petition for enforcement.  This is the final decision of the Merit Systems Protection Board in this compliance proceeding.  Title 5 of the Code of Federal Regulations, section 1201.183(c)(1) (5 C.F.R. § 1201.183(c)(1)).

### NOTICE TO THE APPELLANT REGARDING YOUR RIGHT TO REQUEST ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs.  To be paid, you must meet the requirements set out at Title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g).  The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203.  If you believe you meet these requirements, you must file a motion for attorney fees WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION.  You must file your attorney fees motion with the office that issued the initial decision on your appeal.

### NOTICE OF APPEAL RIGHTS[6]

You may obtain review of this final decision.  5 U.S.C. § 7703(a)(1).  By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file.  5 U.S.C. § 7703(b).

---

[6] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions.  As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the

EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**. This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[7] The court of appeals must <u>receive</u> your petition for

---

[7] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on

review within **60 days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

---

December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:                                          /s/ for
                                                  _____
                                                  Jennifer Everling
                                                  Acting Clerk of the Board

Washington, D.C.